**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

MICHAEL PACHECO,            )   3:07-CV-589-HDM (RAM)
                            )
         Plaintiff,         )   **REPORT AND RECOMMENDATION**
                            )   **OF U.S. MAGISTRATE JUDGE**
    vs.                     )
                            )
SKOLNIK, et al.,            )
                            )
         Defendants.        )
_____)

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' motion for summary judgment (Doc. #23[1]). Plaintiff has opposed (Doc. #30), and Defendants have replied (Doc. #32.). Having read the papers, and carefully considered the arguments and relevant legal authority, and with good cause appearing, the court recommends that summary judgment should be granted dismissing the complaint.

## I. BACKGROUND

At all relevant times, Plaintiff Michael Pacheco ("Pacheco") was an inmate in custody of the Nevada Department of Corrections in Lovelock Correctional Center (LCC) and Northern Nevada Correctional Center (NNCC). (Doc. #6 at 1.) Defendants include the Director and Medical Director of NDOC, the wardens at NNCC and LCC, and various Doe defendants. (*Id*.

---
[1] Refers to the court's docket number.

1

at 2.)

Pacheco brings his complaint pursuant to 42 U.S.C. § 1983 based on inadequate medical care he has received through NDOC. The gravamen of the complaint is that Defendants have failed to address the underlying cause of a skin condition that leads to uncontrollable itching and discomfort. Pacheco alleges that this is due to a problem with his central nervous system caused by exposure to the prescription drug Zyprexa before his incarceration and that he requires treatment by a neurologist. (*Id.* at 3.) He discontinued the medication prior to incarceration. (Doc. #23. Ex. E, at 14:3-11.) Zyprexa is a medication approved by Federal Drug Administration for treatment of schizophrenia and bipolar disorder. *See* The Official ZYPREXA (Olanzapaine) Site, http://www.zyprexa.com/index.jsp (last accessed June 9, 2009).

Pacheco arrived in custody of NDOC in 2007 complaining of his itching problem. He had not used Zyprexa for several months, and any of its side effects should have dissipated in the interim. (Doc. #23-2 at ¶ 4.) NDOC doctors first prescribed him various topical creams and ointments without success. (Doc. #23, Ex. E, at 13:15-21.) Next, he was prescribed oral medications such as Benadryl and Vistaril, which also failed to resolve his symptoms. (Doc. #23 at 6.) Pacheco's physician then consulted with a gastroenterologist to rule out complications arising from a Hepatitis C infection or a liver pathology. A CT scan eliminated any causal relationship between his liver and his skin complaints. (Doc. #23-2 at ¶ 5.) His physician also consulted with a dermatologist in December 2008, who concluded that Pacheco did not suffer from a skin condition and that his treatment was medically appropriate. (*Id.* at ¶ 12.) Finally, Paceheco has been evaluated by a mental health professional as having generalized anxiety disorder and possible malingering. (*Id.* at ¶ 8.) According to his doctor's affidavit,

> The conduct displayed by Pacheco of continually complaining of a skin rash where there is no objective sign of a rash but of lesions caused by non-symptomatic, pathological scratching by the patient-inmate offer reasonably certain data that would confirm Pachecho is suffering from a condition . . . attributable to his mental disorders.

*Id.*

2

Count I of the complaint alleges a violation of the Eighth Amendment's prohibition on cruel and unusual punishment arising from the failure to treat Pacheco's central nervous system condition despite repeated attempts to communicate his concerns to prison officials. (*Id.* at 4.)

Count II alleges discrimination in violation of the Fourteenth Amendment based on Pacheco's indigent status. It also alleges that NDOC has a policy not providing medical treatment to indigent prisoners that is demonstrated by the hiring of unqualified medical personnel and failure to appropriate adequate funding. (*Id.* at 5.)

In Count III, Pacheco again asserts the need to be seen by a qualified neurologist. This claim essentially duplicates Count I. (*Id.* at 6-6A.)

Count IV alleges a failure to train and supervise medical staff to render proper medical treatment in violation of the Eighth Amendment. (*Id.* at 6B.)

Count V contains a similar allegation as Count IV based on a "[f]ailure to admonish medical staff for incompetent/improper medical treatment." (*Id.* at 6C.) Pacheco also alleges that Defendants have refused "render decisive action" in response to his medical complaints.

Count VI presents a medical malpractice claim duplicative of Counts I and III.

Defendants move for summary judgment on the merits of Pacheco's Eighth Amendments claims, as well as the failure to include an indispensable party, contributory negligence, and qualified immunity.

## II. LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing

1 Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "[A]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on the motion. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

A *pro se* complaint, however inartfully drafted, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson*, 127 S.Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The court must construe the pleadings liberally and afford

4

the plaintiff any benefit of the doubt. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). However, sweeping conclusory allegations will not suffice. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). In giving liberal construction to a pro se civil rights complaint, the court is not to supply essential elements of the claim that were not initially pled. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### III. DISCUSSION

**1. EIGHTH AMENDMENT**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). A "serious" medical need exists if the failure to treat a prisoner's condition could lead to further injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. *McGuckin*, 974 F.2d at 1060; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

If Plaintiff's needs were serious, then he must show Defendants acted with deliberate indifference to these needs. *Estelle*, 429 U.S. at 104. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment.'" *Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th Cir. 1989). The plaintiff should allege a purposeful act or omission by the defendant. *McGuckin*, 974 F.2d at 1060. When the plaintiff alleges a mere delay in treatment, a prisoner can make no claim for deliberate medical indifference unless the denial was harmful. *Sealock v. Colorado,* 218 F.3d 1205, 1211 (10th Cir. 2000); *Shapley v. Nevada Board of State Prison Comm'rs*, 766 F.2d

404, 407 (9th Cir.1985) (per curiam).

Regarding the seriousness of Pacheco's medical condition, he repeatedly asserts that he has experienced extreme discomfort, restlessness, and uncontrollable itching throughout the term of his incarceration. (Doc. #6.) He has been prescribed approximately seventeen different medications to treat his condition. (Doc. #23-2 at 24 [Declaration of Dr. David Mar].) There are dozens of entries in Plaintiff's chart for consultations with various medical personnel and eleven Unusual Occurrence Reports documenting incidents where prison officials responded to a "man down" situation requiring emergency intervention. (Doc. #26, Exs. I and J.) Based on this extensive treatment history, Pachecho suffers from a "serious" medical condition that is susceptible to constitutional scrutiny. *McGuckin*, 974 F.2d at 1059.

Turning to the subjective prong of the Eighth Amendment analysis, the court finds that the record demonstrates that NDOC medical staff employed a range of treatments to address Pacheco's ongoing complaints. These multiple attempts to treat his condition negate any claim that Defendants were deliberately indifferent to his medical needs by denying, delaying, or interfering with his treatment. *See Hunt*, 865 F.2d at 201. His claim is seemingly bottomed on the conclusion that his symptoms arise from neurological causes brought on by medication he took before incarceration. *See, e.g.*, Doc. #6 at 3. Pacheco presents no evidence that he is qualified to make such a diagnosis. His physicians cannot recall a physiological mechanism that explains how prior exposure to Zyprexa could lead to his current symptoms or any neurological dysfunction, especially since he stopped taking the medication a long time ago. (Doc. #23-2 at 23.) Therefore, Pacheco does not state a viable claim based on the failure to treat purportedly neurological causes for his skin condition. While it is regrettable that Pachecho continues to suffer from medical problems, that is not the standard by which the constitutionality of his care is determined.

Even when liberally construed, Pacheco's opposition raises no material facts that would preclude summary judgment. For the most part, it raises issues outside of the pleadings, as he now appears to be arguing that an untreated Hepatitis C condition is causing his problems.

6

(Doc. #30 at 13.) To the contrary, Pacheco was referred to a gastroenterologist and received a CT scan to rule out such a possibility. (Doc. #23-2 at 22 ¶ 5.) Pacheco also contends that he was never seen by a dermatologist, but the record indicates that his physician extensively consulted with a dermatological specialist regarding his condition. (*Id.* at 23.) In any case, Pacheco's attempts to identify other courses of treatment do not state a viable claim. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (difference of opinion regarding appropriate course of medical treatment does not amount to deliberate indifference to serious medical needs). Therefore, the court finds that Plaintiff's Eighth Amendment claims based on the failure to adequately treat his condition or to properly train, supervise, or "admonish" the NDOC employees who provided his care should be dismissed.

### 2. FOURTEENTH AMENDMENT

Regarding Pacheco's claims that he was discriminated against in the provision of medical services, the court has found above that the quality of his care exceeded constitutional requirements. According to the affidavit of his treating physician, budgetary constraints or Pacheco's indigence did not influence the care he received. (Doc. #23-2 at ¶ 14.) Defendants estimate that the cost of the care provided to Pacheco amounted to $13,295.68, which belies the claim that he was withheld treatment due to his indigency. Additionally, after reviewing the record, the court finds that the personnel who treated Pacheco were amply qualified to address his needs. Pacheco's opposition does not address his equal protection claim. Accordingly, Count II of the complaint should be dismissed.

### 3. REQUEST FOR CONTINUANCE

Finally, Pacheco makes what will be construed as a Rule 56(f) motion to continue the proceedings to obtain further discovery. *See* Fed. R. Civ. P. 13(f); Doc. #30 at 8. To make such a motion, a party should demonstrate that it diligently pursued previous discovery opportunities and indicate how the additional discovery would preclude summary judgment. *Qualls By and Through Qualls v. Blue Cross of California, Inc.*, 469 F.Supp.2d 922, 925 (9th Cir. 1994). Plaintiff has not pursued any discovery to date. Moreover, he does not identify how

future discovery would raise any issues of material fact.  Because Pacheco has not adequately demonstrated why he is entitled to a continuance, his request should be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #23).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: June 9, 2009.

_____
UNITED STATES MAGISTRATE JUDGE